NORTH LITTLE ROCK *v.* KIRK.

Opinion delivered April 11, 1927.

1. MUNICIPAL CORPORATIONS—PUBLICATION OF ORDINANCE—BURDEN OF PROOF.—In a prosecution under a city ordinance, the burden of showing that there was no publication of the ordinance, as required by Crawford & Moses' Dig., §§ 7494, 7499, is on the person accused who interposes that defense.

2. MUNICIPAL CORPORATIONS—PUBLICATION OF ORDINANCE—PROOF.— The fact that the records of the city as to publication of its ordinances failed to show publication of a particular ordinance *held* insufficient to show that it was not published.

3. LICENSES—VALIDITY OF REVENUE ACT.—A city ordinance requiring an annual license of $50 from persons dealing in real estate or collecting rents thereon, without provisions as to regulation, inspection or supervision of real estate agents, passed before the enactment of a statute authorizing cities of the first and second class to impose occupation taxes, *held* void as a revenue ordinance.

Appeal from Pulaski Circuit Court, First Division; *Abner McGehee,* Judge; affirmed.

*Tom F. Digby,* for appellant.

*W. R. F. Payne* and *Frank Strangways,* for appellee.

SMITH, J.    Appellee was convicted in the municipal court of North Little Rock for violating ordinance No. 124 of that city, and duly prosecuted an appeal to the circuit court, where he was tried upon an agreed statement of facts.    The court found that the ordinance had not been properly published and was void for that reason, and dismissed the prosecution, and the city has appealed.

Sections 1 and 2 of the ordinance read as follows:

"Section 1.    That it shall be unlawful for any person, firm or corporation to engage in selling or buying real estate or to collect rent or rents on property located within the city limits of the city of North Little Rock, unless he or they be the owner or owners thereof, without first having obtained and paid for a license therefor from the proper city authorities.

"Section 2.    That said license shall be issued annually, and the cost thereof shall be $50 per annum, in

advance, and all such licenses shall expire on the 31st of December in the year in which they were issued.''

Section 3 makes the failure to comply with §§ 1 and 2 an offense punishable by a fine.

In the agreed statement of facts it was stipulated ''that the city ordinance record book introduced in evidence contained statements on the margin of some of the ordinances recorded therein to the effect that such ordinances had been published on certain dates, but was wholly silent and contained no entry as to whether ordinance No. 124 had been published, and that the records mentioned above, to-wit: the minute-book of the city council and the ordinance record book, were the only records of the city pertaining in any way to the passage, recording or publication of said ordinance.'' Publication was not affirmatively shown in either of these records.

We think this stipulation insufficient to support the finding that the ordinance in question had not been published. By § 7494, C. & M. Digest, it is made the duty of a municipal corporation to publish its ordinances, and by § 7499 it is provided that it shall be deemed a sufficient defense in a prosecution for the violation of an ordinance to show that no publication was made. But the burden of showing that there was no publication devolves upon the accused who interposes that defense. There was no testimony upon that question, except the stipulation quoted above, and we think this alone was not sufficient to show there had been no publication.

However, we are of the opinion that the judgment of the court was correct upon another ground and must, for that reason, be affirmed.

The ordinance in question is dated January 1, 1905, which is prior to the statute authorizing cities of the first and second class to impose occupation taxes. The ordinance contains no provisions for the regulation, inspection or supervision of real estate agents, and it was obviously passed, not for the purpose of regulating that business, but to raise revenue.

In the case of *Stamps* v. *Burke,* 83 Ark. 351, 104 S. W. 153, the court commented upon the decision in the case of *Arkadelphia Lumber Co.* v. *Arkadelphia,* 56 Ark. 370, 19 S. W. 1053, in which a license fee of $25 per annum for the privilege of keeping a ferry within the corporate limits of the city was held reasonable and valid, and it was pointed out that the license required was for the operation of a ferry within the town limits and that the operation of a ferry might require a considerable amount of inspection and supervision to see that the ferry was kept in good condition, and not allowed at times to be overcrowded, and to see that prompt service was rendered, and that navigation was not disturbed.

But, after thus approving an ordinance where the license fee charged bore some fair proportion to the cost of the regulation which might be required, the court held invalid an ordinance which required persons selling fresh meats in the town to take out a license and pay $12.50 therefor quarterly. In holding the last-mentioned ordinance void the court said: "That the purpose of the license fee in this case was to raise revenue is plain when the amount of the fee is considered in connection with the fact that the ordinance does not attempt in any way to regulate the business beyond requiring a license fee. There is no provision against the sale of unwholesome meats, or any other provision tending to regulate the business or which would require some inspection and supervision on the part of the town authorities. There is nothing but a bald provision that butchers and other dealers in meat shall take out a license and pay $12.50 therefor quarterly."

The case of *Texarkana* v. *Hudgins Produce Co.,* 112 Ark. 17, 164 S. W. 736, reviews the authorities dealing with the right of a city to impose a license fee for the purpose of regulating the business licensed. It was there said:

"Upon consideration of the decisions in various cases of our own, as well of other courts, we think the test of the reasonableness of an ordinance imposing a

license for the purpose of regulation may be said to be that, if it is such a sum as is so manifestly excessive and out of proportion to the regulation which will probably be required to make the ordinance effective, so that it is certain the city will derive a profit from the enactment of the ordinance, then in all such cases it may be said that the purpose of the ordinance is to raise revenue, and such ordinances are void when no statute authorizes their enactment for the purpose of raising revenue.

"On the other hand, if the amount of the regulation is uncertain, and its cost is indeterminate, depending upon circumstances, which may vary, and it does not appear that the license imposed is so out of proportion to the probable cost of its enforcement as that the ordinance will necessarily be the source of income to the municipality, such ordinances should not be declared invalid, as having been passed for the purpose of raising revenue, rather than the purpose of regulation, although they may in fact prove to be the source of profit to the municipality."

Applying this test to the ordinance in question, it may be said that it obviously appears that its purpose is to raise revenue, and not to regulate, and, not having been passed pursuant to a statute authorizing its enactment for the purpose of raising revenue, it is void.

The court therefore properly dismissed the cause, and that judgment is affirmed.